O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WATSON,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | NO. EDCV 11-01123-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff filed a Complaint on July 21, 2011, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On August 18, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on April 24, 2012, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On January 18, 2008, plaintiff filed an application for a period of disability, DIB, and SSI. (Administrative Record ("A.R.") 10.) Plaintiff, who was born on July 24, 1964 (A.R. 15),[1] claims to have been disabled since June 1, 1993 (A.R. 10), due to epilepsy (A.R. 51).

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 10, 55-59, 61-65), plaintiff requested a hearing (A.R. 66). On May 27, 2010, plaintiff, who was represented by Mark Tunnell, an attorney, appeared and testified at a hearing before Administrative Law Judge Michael J. Kopicki (the "ALJ"). (A.R. 10, 21-50.) Vocational expert Howard Goldfarb also testified. (*Id.*) On June 16, 2010, the ALJ denied plaintiff's claim (A.R. 10-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 1993. (A.R. 12.) The ALJ also found that plaintiff has not engaged in substantial gainful activity since June 1, 1993, the alleged onset date. (*Id.*) The ALJ determined that plaintiff has the severe impairment of "seizure disorder." (*Id.*) The ALJ found, however, that plaintiff does not have an impairment or

---

[1] On the alleged disability onset date, plaintiff was 28 years old, which is defined as a younger individual. (A.R. 15.; *citing* 20 C.F.R. §§ 404.1563, 416.963.)

2

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (A.R. 13.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (A.R. 13.) Specifically, the ALJ found that plaintiff:

> can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday, sit (with normal breaks) for a total of six hours in an eight-hour workday, cannot climb ladders, ropes, or scaffolds, must avoid work at unprotected heights and moving/dangerous machinery, cannot operate a motor vehicle as a function of job duties, and cannot use power tools.

(*Id.*)

The ALJ concluded that plaintiff is able to perform his past relevant work as a telephone solicitor.[2] (A.R. 15.) Additionally, based on his RFC assessment and after having considered plaintiff's age,

---

[2] The ALJ noted that the vocational expert found that plaintiff has past relevant work as a stock clerk and telephone solicitor. (A.R. 15.)

education,[3] work experience, and the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including: "packer"; "clothing marker"; and "laborer." (A.R. 15-16.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 1993, through the date of his decision. (A.R. 16.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

---

[3] The ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 15.)

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ:  (1) improperly evaluated plaintiff's credibility; and (2) improperly determined that the vocational expert's ("VE") testimony was consistent with the Dictionary of Occupational Titles ("DOT").  (Joint Stipulation ("Joint Stip.") at 2-15.)

///
///
///

### I. The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 13.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be clear and convincing.

The ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 13.) The ALJ's first ground for rejecting plaintiff's testimony is that "[t]he objective medical findings generally do not substantiate the extent of [plaintiff]'s allegations." (*Id.*) The ALJ, however, found that plaintiff's medically determinable impairments could be expected to cause the symptoms regarding which plaintiff testified. (*Id.*) To the extent the ALJ was of the view that the severity of plaintiff's claimed symptoms and/or pain could not be believed, absent clinical or diagnostic proof establishing the severity described in plaintiff's testimony, that view was improper. "'Excess pain' is, by definition, pain that is unsupported by objective medical findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). The failure of the medical record to corroborate a claimant's subjective symptom testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (nothing that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Thus, the ALJ's finding that the objective evidence does not support the extent of plaintiff's symptom testimony does not, in and of itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. *See* Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); *see also* Burch, 400 F.3d at 681.

The ALJ also found plaintiff to be not credible: (1)because of his

description of his daily routine; (2) because he did not frequently visit his doctor despite alleged side effects of medication; (3) based on alleged inconsistencies between plaintiff's hearing testimony and his prior written statements about his seizures; (4) because plaintiff lacked medical compliance; and (5) based on "[t]he fact [plaintiff] is looking for work[, which] tends to show that he believes he is capable of working."  (A.R. 14-15.)

First, while the ALJ may look at plaintiff's daily activities as a basis for determining whether plaintiff can perform certain work, the ALJ's decision fails to demonstrate how plaintiff's ability to complete paperwork for his divorce, a food stamp application, and his Social Security Administration disability application translates into the ability to perform full-time work as a telephone solicitor or in any other occupation.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily activities may not be relied upon to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis); Smolen v. Chater, 80 F.3d 1273, 1283 n.7 (9th Cir. 1996)("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").  Further, the ALJ fails to show the relevance of plaintiff's daily activities to his credibility determination, because the ALJ did not demonstrate any inconsistency between plaintiff's daily activity level and claimed limitations.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)("Only if the level of activity were inconsistent with Claimant's

8

claimed limitations would these activities have any bearing on Claimant's credibility.").

Second, plaintiff's lack of frequent doctor visits, despite the side effects of his medicine, does not constitute a clear and convincing reason for rejecting plaintiff's credibility. Plaintiff testified that his medication "pretty much controls [his] daytime seizures," but also results in side effects, including: dry mouth, "uncontrollable, constantly moving, like nervousness," and depression. (A.R. 31, 34.) When asked by the ALJ whether plaintiff had reported the side effects to doctors, plaintiff responded that he has not been able to do so, because he is currently in the middle of finding another doctor. (A.R. 31-32.) Plaintiff testified that he is on Medi-Cal and must find a specialist who will take Medi-Cal payments, because he cannot go to a "regular" doctor.[4] (A.R. 25-26.) Further, plaintiff testified that he has seen a counselor for treatment of his depression. (A.R. 34.) Accordingly, the ALJ's second reason for discrediting plaintiff is unpersuasive, because it failed to account properly for his testimony as a whole. *See* Reddick, 157 F.3d at 722-723 (ALJ's credibility finding determined to be erroneous, because ALJ did not fully account for all parts of the

---

[4] The Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also* Smolen, 80 F.3d at 1284; Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995)("[a]lthough progress has been made in providing affordable medical care to the needy . . . many Americans are without the means or opportunity to obtain necessary medical care. Social Security disability and SSI benefits exist to give financial assistance to disabled persons because they are without the ability to sustain themselves. It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")(citations omitted).

claimant's testimony).

Third, the ALJ rejected plaintiff's credibility based upon what the ALJ characterized as inconsistencies in plaintiff's statements. (A.R. 14.) The ALJ noted that "[plaintiff] testified that he had not had a seizure since 2006 to 2007, which was not consistent with his earlier seizure questionnaire." (*Id.*) At the hearing, the ALJ asked plaintiff when his last seizure took place, and plaintiff responded that he thought it was in 2006 or 2007. (A.R. 33.) In plaintiff's earlier seizure questionnaire, question three asked him to "state the dates (approximate) of [his] last four seizures." (A.R. 152.) Plaintiff filled in each of the four blanks with a date in 2007, but he expressly noted in the last two blanks that he was unsure of the specific dates. (*Id.*) Thus, plaintiff's hearing testimony and his earlier questionnaire responses are not inconsistent, and the ALJ's mischaracterization of the record cannot support his adverse credibility finding. *See* Regennitter, 166 F.3d at 1297 ("inaccurate characterization of the evidence" constitutes error).

Further, the ALJ's assertion that plaintiff was "unable to provide a good seizure description" is not a compelling reason to reject plaintiff's testimony as not credible. (A.R. 14.) In response to a seizure questionnaire's question -- "How long do your seizures usually last?" -- plaintiff responded that he was too "unconscious to know." (A.R. 152.) Further, plaintiff testified that he is unaware when he is having a seizure. (A.R. 30.) Plaintiff also testified that he knows a seizure has occurred, after-the-fact, because his jaw is sore, he may have bitten his tongue, and he "[has] to use the bathroom." (A.R. 29-

10

30.) The ALJ fails to explain what he means by "a good seizure description," and he also fails to explain how plaintiff, who is unconscious during seizures, reasonably could be expected to provide such a description. Accordingly, this reason advanced by the ALJ for finding that plaintiff lacks credibility is not clear and convincing.

Fourth, the ALJ's reliance on plaintiff's purported noncompliance with his medication to support an adverse credibility finding is legally insufficient under the circumstances of this case. The ALJ cites only the medical record noting that, in a 2009 emergency room visit, a note was made that plaintiff ran out of his medications one week earlier. (A.R. 15.) This sole incident is plainly insufficient to support the ALJ's conclusion that plaintiff "has not been fully medically compliant." (*Id.*) Plaintiff's financial constraints and consequent inability to buy prescribed medications are documented. In his February 2008 seizure questionnaire, plaintiff was asked how often he sees his doctor, and plaintiff responded, "cannot afford prescription refill or doctor's visits." (A.R. 153.) Further, plaintiff testified that "they just kicked in the Medi-Cal, the approval . . . ." (A.R. 43.) Accordingly, when plaintiff went to the emergency room in 2009, he was not covered by Medi-Cal. The Riverside Community Hospital triage assessment even notes that plaintiff is "awaiting hardship medication." (A.R. 240.) While an unexplained failure to seek treatment may cast doubt on a claimant's credibility, such an inference is unreasonable where plaintiff is indigent. *See* Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989); *see also supra* note 4.

Fifth, the ALJ discredits plaintiff's testimony, because plaintiff

has applied for jobs, and according to the ALJ, such efforts show that plaintiff "believes he is capable of working." (A.R. 15.) This reason for discrediting plaintiff is unconvincing. While it is true that plaintiff expressed a desire to work and applied for jobs as a telemarketer, plaintiff did not indicate that he was capable of *sustained* work. The ALJ's final reason for discrediting plaintiff's testimony is as unpersuasive as his prior reasons, and thus, it does not support the adverse credibility determination.

For the aforementioned reasons, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony. This error requires reversal.

**II. Any Theoretical Problems With The ALJ's Step Five Finding Are Immaterial So Long As His Step Four Finding Stands.**

Plaintiff does not contend that the ALJ's step four finding regarding plaintiff's RFC -- *i.e.*, that plaintiff can return to his past relevant work as telephone solicitor -- would be improper, assuming that the ALJ did not commit any other errors. (*See* Joint Stip. at 8-9.) At step four of the Social Security Administration's sequential evaluation process, "we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ's step five finding addresses an alternative finding. Any error committed by the ALJ at step five is harmless and immaterial *if* the ALJ's step four finding stands, because the step four finding is adequate, on its own, to

preclude an award of benefits.

However, for the reasons discussed above, remand is necessary due to error committed by the ALJ in connection with his assessment of plaintiff's credibility. Further proceedings could result in a modification of the ALJ's RFC assessment and thus, require a revision of the ALJ's step four finding. Accordingly, it would be appropriate, on remand, for the ALJ to consider the inconsistency issue raised by plaintiff regarding the step five finding. Specifically, on remand, the ALJ should consider if the vocational expert's testimony regarding the three occupations was consistent with the DOT. If not, the ALJ should consider whether additional testimony from the vocational expert must be adduced.

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See* Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for rejecting the claimant's subjective pain testimony). As discussed above, should further proceedings cause the ALJ to revisit his step four finding that plaintiff can perform his past relevant work, the ALJ then must determine whether the existing vocational expert's testimony is adequate to allow for the step five determination to be made, and whether any deficiencies in the vocational expert's testimony must be corrected.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 23, 2012

*Margaret A. Nagle*

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE